OPINION OF THE COURT
Richard Lee Price, J.
Petitioner, the New York State Commissioner of Housing and Community Renewal (the Commissioner), seeks a judgment pursuant to subdivision 1 of section 91 of the Private Housing Finance Law directing respondent to comply with the Commissioner’s order of July 20, 1981. The respondents, Electchester First Housing Co. (Electchester) and its president, oppose the relief sought, alleging compliance with certain of the directives contained in the order and the nonapplicability of other portions. Waiver and loches on the part of the Commissioner are also advanced as grounds for noncompliance.
Electchester is a housing company formed pursuant to the provisions of the Private Housing Finance Law. The same law gives the Commissioner regulatory and supervisory powers over Electchester’s housing project in Queens, including budgetary and tenant income controls. The Electchester project was one of the post-World War II developments erected to provide housing for persons with limited incomes. In return for the reasonable rents which it charges, it enjoys a substantial tax abatement.
*632 According to the provisions of the order, Electchester was required to install window guards as required by the New York City Building Code and provide proof that this has been attended to; submit a copy of Electchester’s present budget; permit the Commissioner’s personnel on-site access to the project’s tenant list and conduct a review of tenant selection procedures; and, finally, complete tenant income interviews. It is obviously this last-described procedure which is causing Electchester to balk.
Electchester has alleged in its answer to the petition that it has installed the required window guards. Accordingly, in the judgment to be settled herein, provision shall be made for the furnishing of proof of compliance within 30 days after service of notice of entry of the judgment. Electchester contends that it has submitted a budget, but it is not in the form required by the pertinent regulations. Accordingly, the judgment to be settled herein shall provide that a budget as set forth on the printed form, appended to the Commissioner’s verified reply as Exhibit B, shall be prepared and submitted within 30 days after service of notice of entry of the judgment.
Similarly, the judgment to be settled herein shall provide for the on-site inspection required by subdivision (d) of the order at a time mutually convenient to the Commissioner and respondents, but in no event later than 30 days after service of notice of entry of the judgment.
Respondents contend that for various reasons, the provisions of the Division of Housing and Community Renewal’s Management Bureau memorandum No. 81-B-3 requiring tenant income interviews do not or should not apply to it. This court finds such contentions to be without merit. Respondents in their brief candidly admit that section 85-a of the Private Housing Finance Law provides income-related criteria for the selection of tenants based upon an earnings rental ratio. Pursuant to this section, if a tenant’s income increases beyond a certain point, he must pay a rent surcharge. If the tenant’s income progresses still further, he must find another dwelling. Electchester contends that it “does not now nor has it ever required the income which would be produced by the surcharge to its residents”. For this reason, supposedly, respondents have *633 never conducted the income survey. Yet in the same breath, respondents admit that they have requested and received increases in carrying charges to its residents, presumably based upon a showing of need. These increases, which would certainly have been lessened pro tanto by assessed surcharges, were borne by all the residents.
Even putting aside this inconsistency, however, respondent is ignoring the fact that the income survey is not merely a revenue raising device. It is also a tenant screening device. It is quite conceivable that many of Electchester’s residents no longer need the housing assistance indirectly financed by the public purse in the form of an enormous tax abatement. In considering the question of income limitations on residents of a project in similar circumstances, our Court of Appeals commented:
“The specific object of the statute was to eradicate slum dwellings by providing the occupants of such premises safe and sanitary low-cost apartments to which they could remove. The occupants of these slums were and are, generally speaking, the ‘wage earners’ of whom the statute’s findings spoke initially, and who were later more specifically classified by reference to income to rental ratios. By promoting the vacancy of apartments in subsidized projects, reasonably based upon an increase in the tenant’s income sufficient to permit him to relocate in nonsubsidized housing, those not as fortunate in lower income brackets, constrained theretofore to remain in their slum dwellings, are afforded the opportunity to remove therefrom and, in time, slum areas are lessened.
“The provisions imposing a surcharge in lieu of eviction upon attaining a certain income level also have a tendency to promote the statutory purpose as do the eviction provisions, since a tenant subjected to a surcharge may thereby be induced to remove to better accommodations.” (Fruhling v Amalgamated Housing Corp., 9 NY2d 541,548, opp dsmd 368 US 70.)
It is obvious that pursuant to public policy and statutory authority (9 NYCRR Subpart 1727-2) the Commissioner has the right to the income review which he seeks.
*634 Respondents argue that the Commissioner, by never previously pressing for the income survey, has both been guilty of loches and waived his right to the relief sought. However, no facts have been set forth demonstrating change of Electchester’s position or the like.
In any event, these defenses are not available against the Commissioner here. (See State of New York v Rockland County, 14: AD2d 921; Matter of Jamestown Lodge 1681 Loyal Order of Moose, 31 AD2d 981.)
Nevertheless, the court would be remiss if it did not note the unique nature of the Electchester housing development. The buildings were built to a great extent by “sweat equity”. The trade skills and union commitments of the original residents were utilized to erect safe and esthetic housing at a reasonable price. Such donation of labor and time by development residents has continued to this time on a daily basis. It has allowed the respondent to keep carrying charges at a minimum and has avoided the necessity of any large scale increases.
This is not a case where a landlord seeking to increase his profits is at odds with the Commissioner or his agency. Rather, it is one where working people are seeking to maintain a way of life that they have obtained to a large degree through their own diligence and perseverance. The court strongly urges the petitioner to use its powers to insure that the subject income survey does not affect the stability or viability of this housing development that has been an asset to the city for these many years.
The judgment to be settled hereon shall call for compliance with memorandum No. 81-B-3 and the income interview portion of the order within 60 days after service of notice of the judgment.