OPINION OF THE COURT
Richard W. Wallach, J.
The antagonists in this action for a declaratory judgment and motion for a temporary injunction are a limited profit housing company, Beth Israel North Housing Co., Inc., organized under the Private Housing Finance Law and the Commissioner of the State Division of Housing and Community Renewal. The issue (said by the Attorney-General to be one of first impression) is whether the commissioner can compel Beth Israel Hospital to exact an income questionnaire from its staff members who occupy the hospital campus housing project, with the object either to surcharge or evict those tenants whose incomes exceed certain máximums. The court holds that under the broad statutory scheme which regulates limited profit housing, the nurses, interns and other staff members who occupy the housing facility are not subject to those income limitations which must otherwise be met by persons of low income who *441 occupy other housing facilities created under this law (cf. New York State Comr. of Housing & Community Renewal v Electchester First Housing Co., 113 Misc 2d 631).
Plaintiff’s certificate of incorporation was filed with the Department of State on August 11, 1966. It provides in relevant part as follows: “The purposes for which the Company is to be formed are to provide housing and auxiliary facilities for staff members, employees or students of Beth Israel Medical Center, New York, New York, and their immediate families or for aged persons of low income”.
In order to provide housing facilities for the hospital personnel of Beth Israel Medical Center, a not-for-profit tax exempt hospital, plaintiff company first financed with a public bond issue and they constructed the present housing facility containing 184 apartments with 652 rooms. Those housing accommodations are exclusively for nurses, interns, residents, and other hospital staff members. Occupancy is conditioned upon tenant’s continuing status as an employee or staff member of the hospital. Each lease provides that any tenancy may be terminated on 30 days’ notice, or in the case of severance from hospital employment, three days’ notice.
The powers of a limited profit housing company are controlled by section 13 (subd 17, par a) of the Private Housing Finance Law. The statute reads as follows:
“17. The certificate of incorporation of a non-profit company incorporated pursuant to the provisions of the not-for-profit corporation law and this article shall, in addition to all other matters required by law to be stated therein, state:
“a. That its purpose is to provide housing and auxiliary facilities for staff members, employees or students of any college, university, hospital, child care institution and their immediate families, for aged or handicapped persons of low income, or for any one of the above purposes, or to provide housing accommodations pursuant to the terms and provisions of this article in the case of a municipally-aided non-profit company, or to provide housing accommodations pursuant to the provisions of this article in the case *442 of a low income non-profit housing company” (the italicized language was added by L 1977, ch 565, § 1, eff Aug. 1, 1977).
By order dated March 11, 1982, the commissioner directed plaintiff to gather complete income data from its tenants by means of the comprehensive questionnaire provided for in his published regulations. This action, initiated by way of order to show cause with a temporary restraining order, commenced on April 26, 1982. Although there is some authority for conducting this type of challenge by way of an action for declaratory and injunctive relief (Fruhling v Amalgamated Housing Corp., 9 NY2d 541), this court- agrees with the commissioner that it should treat the complaint as a petition in an article 78 proceeding (CPLR 103, subd [c]; Mundy v Nassau County Civ. Serv. Comm., 44 NY2d 352; Matter of Acosta v Lang, 13 NY2d 1079). Recast in terms of article 78 the application was timely brought (CPLR 217), and clearly the gist of the housing company’s contention is that the commissioner “is proceeding or is about to proceed without or in excess of jurisdiction” (CPLR 7803, subd 2), or that the commissioner’s determination to impose income qualifications upon the tenants of this housing project is either “affected by an error of law or was arbitrary and capricious” (CPLR 7803, subd 3).
As a matter of statutory construction this court parts company with the commissioner, and is persuaded that section 13 (subd 17, par a) of the Private Housing Finance Law contemplates two entirely different kinds of potential housing beneficiaries: (1) handicapped persons of low income; and (2) staff members, employees or students of any college, university, hospital, child care institution and their immediate families. The 1977 amendment to the statute would permit the certificate of incorporation of a private housing company to limit its tenantry to any one of these classes. For the second class of tenants the income strictures imposed by section 31 (subd 2, par [a]) of the Private Housing Finance Law can have no rational application, and the limitation of the modifying words “low income” to handicapped persons evidences a legislative *443 intent to remove the low income qualification entirely from the second class.
Recourse to legislative history also supports the exclusion of this hospital facility from the “low income” criteria. Limited profit housing companies are an imaginative legislative response to the State-wide housing shortage; they are designed to attract competitive private investment in public housing with fiscal assistance taking the form of tax abatements. The first public housing law of this type (L 1955, ch 407) was limited to low income tenants, defined as those whose probable aggregate annual income did not exceed six times the rental. In 1957 the law was amended to permit the formation of companies “for the purpose of providing housing and auxiliary facilities for students of a college or university and their immediate families” (L 1957, ch 973, § 2). Wholly absent was any reference to income. In 1958 faculty members and their immediate families were included, again without reference to income. In the special instance where the Legislature desired to impose a preference for low income tenants at a hospital housing facility (Roswell Park Memorial Institute in Buffalo [L 1958, ch 505]), the statute specifically so provided. Such special preference provisions are notably absent in the 1960 amendment under which this plaintiff housing company is organized and which for the first time contemplated “housing and auxiliary facilities for staff members * * * [and] employees * * * of a * * * hospital * * * or for aged persons of low income”. (L 1960, ch 670, § 1; emphasis added.)
It is of some significance that for more than the past 12 years the commissioner and his predecessors have never sought to apply the income limitations to this project. While neither the doctrine of waiver nor laches can be invoked against the State (State of New York v Rockland County, 74 AD2d 921; Matter of Levey, 33 AD2d 1066; Matter of Jamestown Lodge 1681 Loyal Order of Moose, 31 AD2d 981; Matter of Moss, 277 App Div 289), the inaction of the commissioner can be viewed as a practical construction of his proper powers under the statute vis-a-vis what amounts to a hospital staff dormitory.
*444 It must also be noted that plaintiff’s sponsor here is Beth Israel Medical Center, itself a not-for-profit hospital recognized as a tax exempt entity by the United States Internal Revenue Service. The tax abatement of its housing company does not arise under the provisions of the Private Housing Finance Law but from section 422 of the Real Property Tax Law. The hospital alleges, and this is nowhere contradicted, that it cannot continue its operations unless it is able to provide on-campus housing for its night nurses, interns and residents, who are subject to emergency call at any hour of the day or night every day of the year. The hospital also avers, without contradiction, that it cannot continue to attract medical personnel of the highest caliber unless it is in a position to provide sufficient on-campus housing accommodations.
Nonetheless, under subdivision (n) of section 17 of the Private Housing Finance Law the commissioner does retain general supervisory powers over this type of private housing company, and therefore the commissioner is entitled to satisfy himself that this housing facility is in fact being fully occupied by the hospital’s medical personnel.
It follows that plaintiff (now petitioner) is entitled to enter a judgment annulling the commissioner’s order of March 11, 1982, in its entirety, without prejudice to the commissioner’s right to issue a new order limited to annual reportage and verification by the petitioner of the hospital employment status of each qualifying occupant of all its dwelling units. The respondent commissioner’s cross motion to dismiss the proceeding is in all respects denied.